IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

| | |
|---|---|
| GALE M. LYONS (A/K/A GAIL LYONS, GALE MALISSA LYONS); | ) Civil Action No. 8:05-2503-MBS-JRM ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| EDGEFIELD COUNTY POLICE; MIKE COCKRELL; AND FRED DENSMORE, | ) **MAGISTRATE JUDGE'S** ) **REPORT AND RECOMMENDATION** ) |
| Defendants. | ) ) |

Plaintiff filed this action on August 29, 2005.[1] Defendants are the Edgefield County Police ("ECP") and Town of Edgefield police officers Mike Cockrell ("Cockrell") and Fred Densmore ("Densmore"). Defendants filed a motion for summary judgment on June 12, 2006. Because Plaintiff is proceeding pro se, she was advised on June 15, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of her complaint. Plaintiff filed responses on July 19 and 21, 2006.

FACTS

At the time of the alleged incidents, Plaintiff was married to Richard Lyons ("Richard"). Richard was employed at the Edgefield Federal Prison ("EFP") in Edgefield, South Carolina. Plaintiff lived in Columbia, South Carolina. Richard was not living with Plaintiff at the time.

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

On April 12, 2003, Richard was driving a 1986 burgundy Volkswagen Golf to his job at EFP. Geraldine Faust ("Faust"), who also worked at EFP, was a passenger in the car.[2] Richard called 911 while he was on a road near the EFP. He claimed his vehicle was being followed by a gold colored SUV driven by a female who possibly had a weapon. While Richard was on the telephone with the 911 dispatcher, the front end of Plaintiff's car and the driver's side of Richard's car made contact in a parking lot at the EFP.[3] The cars left the scene and proceeded outside the prison on Gary Hill road.[4]

Lieutenant Cockrell and officer Densmore were on patrol for the town of Edgefield. They received a call from the 911 dispatcher and were told that a vehicle was being followed by a gold colored SUV which was being driven by a possibly armed suspect. While in route to the location, Cockrell and Densmore were informed by the dispatcher that the gold SUV had struck the complainant's vehicle. Cockrell Aff., Para. 7; Densmore Aff., Para. 6; 911 tape (Plaintiff's July 21, 2006 Amended Opp. Mem., Ex. 3).

The officers observed a gold colored SUV being followed by a small red car in the direction of the Town of Edgefield on Gary Hill Road. The officers activated the lights and siren on their police cruiser and pulled over the gold SUV. Once stopped, Plaintiff got out of her SUV.[5] When

---

[2]Lyons claims that Faust and Richard were having an affair. She alleges that Richard falsely told Defendants that he was residing in North Augusta, South Carolina, but he was actually residing with Faust in Augusta, Georgia at the time of the alleged incidents.

[3]The parties dispute whether Plaintiff hit the car driven by Richard or Richard hit Plaintiff's car.

[4]The parties dispute whether Plaintiff left the parking lot first and was followed by Richard or Richard left first and Plaintiff later passed him (at which time Richard followed her).

[5]Defendants contend that Plaintiff "jumped out of her car" and was screaming obscenities
(continued...)

2

asked what was going on, Lyons replied, "nothing, I've got everything I need right here" and held up a disposable camera. Cockrell Aff., Paras. 8-10; Densmore Aff., Paras. 7-9. Cockrell confiscated the camera.

Faust and Richard told the officers that Plaintiff had repeatedly tried to ram his vehicle with her SUV, eventually striking the driver's side door of his vehicle with the right front corner of her SUV. Richard stated he attempted to flee the area and was passed on Gary Hill Road by Plaintiff. Plaintiff indicated to the officers that she was trying to get pictures of her husband with Faust. Cockrell Aff., Paras. 11, 12, and 15; Densmore Aff., Paras. 10, 11, and 13.

The officers noted damage to the right front corner of the SUV driven by Plaintiff and took photographs of the vehicles. Based on their investigation and evidence present at the scene, the officers arrested Plaintiff and placed her in the patrol car. Cockrell Aff., Paras. 16-18; Densmore Aff., Paras. 14-16.

Plaintiff began complaining of chest pains and the officers contacted the dispatcher to send an EMS unit. The EMS unit transported Plaintiff to the Edgefield County Hospital where Plaintiff was treated and released from the Emergency Room. She was then transported to the detention center. On April 13, 2003, Plaintiff was transported again to the Edgefield County Hospital. Medications were administered and she was released back to the detention center. Plaintiff's Amended Opp. Mem., Ex. 12; see Cockrell Aff., Paras. 19-21; Densmore Aff., Paras. 17-19. Plaintiff was released from the detention center on April 14, 2003.

---

[5](...continued)
at Faust and Richard, which Plaintiff denies.

Subsequent to Plaintiff's arrest, Faust and Richard gave written statements to the officers. Defendants' Motion for Summary Judgment, Ex. 6. Cockrell and Densmore obtained arrest warrants which were signed by a magistrate on April 14, 2003, on charges of assault and battery of a high and aggravated nature, criminal domestic violence of a high and aggravated nature, and malicious injury to personal property. Defendants' Motion for Summary Judgment, Ex. 4.

The solicitor's office subsequently issued indictments to the grand jury for malicious injury to personal property and two counts of assault and battery with intent to kill ("ABIK"). The grand jury returned true bills on all three charges on May 29, 2003. Plaintiff's Ex. 20. A trial on the three charges was held. On August 28, 2003, Plaintiff was found not guilty of all charges. Plaintiff's Ex. 20.

## DISCUSSION

Plaintiff alleges that her constitutional rights were violated as a result of her arrest and prosecution. She appears to allege that she was falsely arrested, falsely imprisoned, maliciously prosecuted, had her camera illegally searched and seized, and suffered medical complications from not having certain medications while she was detained.[6] Defendants contend they are entitled to summary judgment because: (1) there is no evidence that Defendants violated any constitutional or statutory rights of Plaintiff; (2) the Town of Edgefield Police Department is not a proper party

---

[6]Plaintiff also claims that Cockrell stalked her at the Edgefield County Courthouse and railroaded her into a guilty plea. Complaint at 7-8. It is unclear under what constitutional or statutory provision Plaintiff is asserting these claims. Further, as Plaintiff did not plead guilty to any charges, she does not appear to have any claim as to these alleged actions.

In her amended opposition memorandum, Plaintiff also appears to assert claims against the public defender assigned to her case. She has not, however, named him as a defendant. Further, there is no indication that the public defender is a state actor subject to suit under 42 U.S.C. § 1983. See Polk County v. Dodson, 454 U.S. 312, 317-324 and nn. 8-16 (1981).

defendant and cannot be held liable for any unconstitutional acts of its employees under a respondent superior theory; (3) Defendants are entitled to qualified immunity; (4) the individual Defendants cannot be held liable for any state law claims pursuant to the South Carolina Tort Claims Act ("SCTCA"); and (5) to the extent that Plaintiff sets forth any state law cause of action against Defendants, Defendants are not liable pursuant to the exceptions to waiver of immunity afforded under the SCTCA.

    1.    <u>ECP</u>

Counsel for Defendants provides there is no such entity as the ECP and that Defendants Cockrell and Densmore were employed by the Town of Edgefield Police Department. The Town of Edgefield Police Department contends that, to the extent Plaintiff has brought this action against it, it cannot be held liable under a theory of respondeat superior.

ECP is not a legal entity amenable to suit for constitutional claims. Defendants provide that there is no such entity. Plaintiff has provided nothing to dispute this. Additionally, buildings, walls, and fences do not act under color of state law. <u>See</u> <u>Allison v. California Adult Authority</u>, 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under § 1983). Buildings and correctional institutions, like sheriff's departments and police departments, are not usually considered legal entities subject to suit. <u>See, e.g.</u>, <u>Martinez v. Winner</u>, 771 F.2d 424, 444 (10th Cir. 1985)(Denver Police Department not a separate suable entity), vacating and remanding for consideration of mootness, 475 U.S. 1138 (1986); <u>Post v. City of Fort Lauderdale</u>, 750 F. Supp. 1131 (S.D.Fla. 1990); <u>Shelby v. City of Atlanta</u>, 578 F. Supp. 1368, 1370 (N.D.Ga. 1984); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989)(§ 1983 claims are directed at "persons" and a jail is clearly not a person amenable to suit).

Even if ECP is an entity that can be sued under § 1983, Plaintiff has not alleged that ECP actually took any of the alleged actions. Plaintiff cannot establish that ECP was liable for the acts of its employees under a respondeat superior theory based on the facts alleged. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987).

    2.    Medical Claims

In her complaint, Plaintiff alleges that as a result of Defendants' actions she did not have her medication (for her heart problems, anxiety, and blood pressure) which resulted in elevated blood pressure and caused more damage to her heart. Complaint at 8-9. It is unclear whether Plaintiff is claiming that staff members at the detention center were deliberately indifferent to her medical needs by failing to give her certain medications. She, however, has not named any of the allegedly responsible persons as defendants in this action. To the extent Plaintiff has alleged that Defendants were responsible for her medical problems, it is recommended that these claims be dismissed sua sponte for the reasons discussed below.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[7] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.

---

[7] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

> \* \* \* \* \* \* \*
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and a defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of her serious medical needs. Plaintiff was taken to the Edgefield County Hospital at the time of her arrest. She refused medication for anxiety and was released. Plaintiff was taken again to the hospital on the next day, complaining of hypertension, hip, and wrist pain. See Plaintiff's Amended Opp. Mem., Ex. 12. Medications were administered and Plaintiff returned to the detention center. Plaintiff was released from the detention center the next day.

   3.     Property Claims

Plaintiff claims that she had a watch with her when she was arrested, valued at $60 to $70, which was taken from her and never returned. She may also be attempting to assert a claim concerning the disposable camera.

Deprivations of personal property, including negligent deprivations of personal property do not support an action for damages under 42 U.S.C. § 1983 . See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986).  Negligence, in general, is not actionable under  42 U.S.C. § 1983 . See Ruefly v. Landon, 825 F.2d 792, 798-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir.1995). Furthermore,  42 U.S.C. § 1983  does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago Dep't. of Social Services, 489 U.S. 189, 200-203 (1989).

The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property--even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state. Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir. 1986).  Yates has been partially superannuated for cases where plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty."  See Plumer v. Maryland, 915 F.2d 927, 929-32 & nn. 2-5 (4th Cir. 1990) and Zinermon v. Burch, 494 U.S. 113 (1990). Nevertheless, the holding in Yates is still binding on lower federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal property.

Under South Carolina law, Plaintiff's claims may be cognizable under SCTCA, § 15-78-10 et seq., S. C. Code Ann.  Section 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Under the SCTCA, a claimant is required to file an administrative claim with the agency, department, or the State Budget and Control Board before seeking judicial relief in a Court of

9

Common Pleas.  See S.C. Code Ann. § 15-78-80.  South Carolina case law indicates that claimants under the SCTCA must strictly comply with its requirements and must timely pursue their claims before the applicable limitations period expires.  See, e.g., Murphy v. Richland Memorial Hosp., 455 S.E.2d 688 (S.C. 1995); and Pollard v. County of Florence, 444 S.E.2d 534 (S.C.Ct. App. 1994).

Cases from other circuits point out that the availability of a state cause of action for an alleged loss of property provides adequate procedural due process.  In other words, where state law provides such a remedy, no federally guaranteed constitutional right is implicated.  See King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986); Slaughter v. Anderson, 673 F. Supp. 929, 930 (N.D.Ill. 1987).

    4.    Eleventh Amendment Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

5.      Qualified Immunity

Defendants argue that they are entitled to dismissal on the basis of qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The analysis of the defense of qualified immunity is examined using a two-step analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). The first task is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Id. at 200-201 If the answer is yes, the next task is to determine "whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).

Plaintiff alleges that Defendants violated her constitutional rights by arresting her without probable cause, maliciously prosecuting her, and seizing her disposable camera. She fails to state a deprivation of a constitutional right, as discussed below. Thus, the individual Defendants are entitled to qualified immunity in their individual capacities.

a. False Arrest/False Imprisonment

Plaintiff appears to allege that Defendants lacked probable cause to arrest and detain her because she did not have a weapon, Faust and Richard made false statements to the officers, her vehicle did not hit the other vehicle, and she did not jump out of her vehicle or scream obscenities. Defendants contend that they had probable cause to arrest and detain Plaintiff.

"The Fourth Amendment is not violated by an arrest based on probable cause." Graham v. Connor, 490 U.S. 386, 396 (1989). A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause exists when the facts and circumstances within an officer's knowledge are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Here, Plaintiff fails to show that her constitutional rights were violated because her arrest was based on probable cause. A 911 call was made in which it appeared that two individuals were being followed by a possibly armed suspect, the car continued to follow them and contact was made, the damage appeared to be consistent with Plaintiff's vehicle hitting the car driven by Richard,[8] and Faust and Richard submitted statements consistent with the Defendants' conclusion that an offense occurred.

---

[8] Plaintiff argues that Richard's car actually hit her car based on testimony by an expert she retained at trial. She has, however, only submitted part of the expert's testimony and there is no indication that this information was available prior to trial or any ruling was ever made as to who was at fault in the crash.

12

      b.      Malicious Prosecution

Plaintiff alleges that Defendants maliciously prosecuted her. Complaint at 2. Defendants have not specifically addressed this claim, but argue that their actions were supported by probable cause and they are entitled to qualified immunity.[9]

"A true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution." Whitner v. Duke Power, 288 S.E.2d 389 (S.C. 1982), citing Kinton v. Mobile Home Industries, 262 S.E.2d 727 (1980). Here, the grand jury issued a true bill of indictment on each of the charges. Plaintiff's Ex. 20.

In her memorandum in opposition to summary judgment, Plaintiff appears to claim that Defendants violated her constitutional rights by presenting information to the grand jury. The Fourth Circuit has extended the protection of absolute immunity for government witnesses to their grand jury testimony. Lyles v. Sparks, 79 F.3d 372, 378 (4th Cir.1996).

Plaintiff claims that Defendants lacked probable cause as to her arrest, detention, and prosecution because Defendants failed to conduct a thorough investigation. The fact that the officers did not conduct a more thorough investigation does not negate the probable cause established at the time of arrest. See Wadkins v. Arnold, 214 F.3d 535, 543 (4th Cir.2000) ("The question before us

---

[9]The solicitor who issued indictments to the grand jury and prosecuted the case has not been named a defendant in this action. A prosecutor is a quasi-judicial officer who enjoys absolute immunity when performing prosecutorial, as opposed to investigative or administrative functions. Imbler v. Pachtman, 424 U.S. 409 (1976). A prosecutor is entitled to absolute immunity for claims that rest on his decisions regarding "whether and when to prosecute." Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir.1996) (quoting Imbler, 424 U.S. at 431 n. 33); see also Ehrlich v. Giuliani, 910 F.2d 1220 (4th Cir.1990). "The decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function." McGruder v. Necaise, 733 F.2d 1146 (5th Cir.1984) (offer to drop criminal charges in exchange for pretrial detainee's decision to drop civil rights suit; held, immunized).

is not whether [the officer] exhausted every potential avenue of investigation."); Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.").

There is no independent cause of action for malicious prosecution under § 1983. A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000). In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, the defendant must have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." Brooks v. City of Winston-Salem, 85 F.3d 178, 183-84 (4th Cir. 1996). "An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003) (internal quotation marks omitted).  Here, as discussed above, Plaintiff's arrest was supported by probable cause.

      c.     <u>Seizure of Camera</u>

Plaintiff appears to allege that the seizure of her disposable camera violated her constitutional rights. Defendants have not specifically addressed this issue, but have generally claimed that they are entitled to qualified immunity.

14

A search incident to a suspect's proper arrest is not unreasonable if it is limited to the suspect's person and the area within his or her immediate control. Chimel v. California, 395 U.S. 752, 763 (1969). The area within the arrestee's immediate control is 'the area from within which he might gain possession of a weapon or destructible evidence.' Id.. Here, the seizure of Plaintiff's camera was reasonable as she was allegedly pointing it out the window at Faust and Richard and she was holding it at the time of her arrest.

6.     State Claims

Plaintiff may be attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 22) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

December 1, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

16